FILED

2012 MAY 18 AM 11:05

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, Acting as a Receiver for La Jolla Bank FSB, also known as FDIC, <br><br> Plaintiff, <br> vs. <br><br> TWIN DEVELOPMENT, LLC, a California limited liability company; WALLACE BENWARD, an individual; and DOES 1 through 50 inclusive, <br><br> Defendants. | CASE NO. 10-cv-2279 – BEN (KSC) <br><br> ORDER: <br><br> (1) DENYING MOTION TO SET ASIDE DEFAULT, [Doc. No. 22]; and <br><br> (2) DENYING MOTION FOR LEAVE TO FILE COUNTERCLAIM, [Doc. No. 23]. |

This is a breach of contract action arising out of Defendants' alleged failure to pay as contracted under a loan agreement. Currently before the Court is Defendants' motion to set aside the default entered against Defendant Twin Development, LLC ("Twin") and to reinstate its answer, [Doc. No. 22], and Defendants' motion for leave to file a counterclaim, [Doc. No. 23]. Having considered the parties' arguments, and for the reasons set forth below, the Court **DENIES** both motions.

## BACKGROUND

### I. Factual background

This action arises out of a loan agreement between La Jolla Bank, FSB and Defendants Twin and Wallace Benward. Benward is the manager and owner of Twin. In November 2006, Twin

allegedly executed and delivered to La Jolla Bank a Promissory Note in the principal amount of $16.5 million. (Compl., Ex. 1 (attached as Exhibit A to Exhibit 5 to FDIC-R's Notice of Removal [Doc. No. 1]).) The note was secured by Deeds of Trust on real properties in Alpine, California and Vista, California (hereinafter, the "Alpine Property" and the "Vista Property," respectively). (*Id.*) Both Deeds of Trust were executed on November 20, 2006 and recorded on November 21, 2006. (*Id.*, Exs. 2, 3.) Both list Twin as the trustor, La Jolla Bank as the beneficiary, and Old Republic Title Company as the trustee. According to La Jolla Bank, on or about July 1, 2009, Twin defaulted under the terms of the loan agreement by failing to make payment on the loan when due. (Compl. ¶ 20.)

Defendants' proposed counterclaim describes an additional loan transaction between the parties. According to Benward, in or around 2007, he was approached by two officers of La Jolla Bank, Rick Hall and Martin Rodriguez, regarding an investment opportunity in Riverside, California (hereinafter, the "Riverside Property"). (Proposed Counterclaim ¶ 14 [Doc. No. 23-3].) Benward was provided with an official appraisal, from 2005, valuing the Riverside Property at $21.5 million. (*Id.* ¶ 15.) Benward alleges that as part of the inducement to invest in and purchase the Riverside Property, Hall and Rodriguez offered the property to him at a discounted price of $16.5 million, promised him a lower interest rate, and indicated that his deed of trust would be recorded in the second position (behind only La Jolla Bank). (*Id.* ¶ 16.) Hall and Rodriguez also allegedly promised to transfer to Benward all four parcels listed in the legal description of the appraisal provided by La Jolla Bank. (*Id.*) Based on these representations, Benward formed Mission South, LLC to purchase the Riverside Property and advanced $3,875,000 from Twin towards the purchase price. (*Id.* ¶ 18.) A Deed of Trust was executed on June 28, 2007, listing Mission South as the trustor, Chicago Title Company as the trustee, and Twin as the beneficiary. (*Id.*, Ex. 5.) A Grant Deed in favor of Mission South was executed on June 26, 2008. (*Id.*, Ex. 7.) Both the Deed of Trust and the Grant Deed list only three of the four parcels that allegedly were to be transferred to Benward. (*Id.*, Exs. 5, 7.)

**II.   Procedural background**

La Jolla Bank commenced this action on December 9, 2009, by filing a complaint against Benward and Twin in the San Diego County Superior Court—North County Branch. The Complaint alleges ten causes of action: breach of contract based on the loan agreement and the commercial

guarantee, judicial foreclosure against the Alpine and the Ventura Properties, deficiency judgment, open book account, account stated, money lent, money paid, and money had and received. On January 14, 2010, Twin and Benward filed their General Denial to the Complaint through attorney Stanley D. Prowse. On February 19, 2010, La Jolla Bank was closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation was appointed as receiver ("FDIC-R"). On June 22, 2010, the San Diego County Superior Court granted FDIC-R's application for an order substituting it in place of Plaintiff La Jolla Bank as the proper party in interest.

On June 25, 2010, the San Diego County Superior Court granted the motion of attorney Stanley D. Prowse to be relieved as counsel for Defendants Benward and Twin.

On November 4, 2010, FDIC-R removed the action to this Court. FDIC-R subsequently moved for an entry of default against Twin and to strike its answer. Twin failed to file an opposition to the motion. On August 19, 2011, the Court granted FDIC-R's motion for default against Twin and ordered that Twin's answer be stricken, noting that Twin had failed to obtain counsel in the fourteen months since prior counsel was granted leave to withdraw and that it failed to appear in this case since removal. [Doc. No. 10.] On September 28, 2011, a telephonic status conference was held before Magistrate Judge Cathy Ann Bencivengo. Benward appeared at the status conference for himself and Twin. At the status conference, Benward represented that he was completely unaware of the default entered against Twin or the need for Twin to have counsel. The status conference was continued to October 17, 2011 to permit Twin an opportunity to obtain counsel. [Doc. No. 15.] On October 17, 2011, Twin appeared at the telephonic status conference through attorney Robert J. Legate.

On November 3, 2011, Defendants filed the present motion to set aside the default against Twin and to reinstate its answer. On November 4, 2011, they filed a motion for leave to file a counterclaim. FDIC-R responded to both motions, and Defendants replied. The Court decides both motions without oral argument pursuant to Civil Local Rule 7.1(d)(1).

## DISCUSSION

I.   **Motion to set aside default**

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause." To determine "good cause," the Court must consider three factors: (1)

whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; and (3) whether reopening the default would prejudice the other party. *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). This standard is disjunctive, "such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.* Nonetheless, "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Id.* (citations and internal quotation marks omitted).

In the present case, the Court need only address the second prong of the analysis, which requires the party seeking to set aside a default to demonstrate that it had a meritorious defense. Although "the burden on a party seeking to vacate a [default] is not extraordinarily heavy," that party "must present specific facts that would constitute a defense." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 700 (9th Cir. 2001); *see also Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) ("To permit reopening of the case in the absence of some showing of a meritorious defense would cause needless delay and expense to the parties and court system."). Under Rule 55(c), the Court interprets liberally what constitutes a meritorious defense. *See Stone*, 794 F.2d at 513. Thus, "[a]ll that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense." *Mesle*, 615 F.3d at 1094. The Court need not determine whether the facts alleged are actually true; this will be the subject of later litigation. *Id.* At the same time, however, general denial of claims set forth in the complaint is not sufficient. *See Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969) (holding that district court did not abuse its discretion in declining to set aside the default where defendant offered "a mere general denial without facts to support it").

Twin has failed to demonstrate that it had a meritorious defense. First, Twin suggests that its previous answer, which the Court ordered stricken following the entry of the default, provides a meritorious defense. A review of the answer, however, shows that it was a mere general denial of the allegations in the Complaint. (*See* General Denial (attached as Exhibit C to Exhibit 5 to FDIC-R's Notice of Removal).) Such general denial of allegations in the Complaint is not sufficient to establish a meritorious defense. *See Madsen*, 419 F.2d at 6. Moreover, although the General Denial also asserted affirmative defenses under California Code of Civil Procedure Sections 580b, 2809, and

2910,[1] Twin makes no effort to explain how those affirmative defenses are applicable.

Second, Twin asserts that it has a meritorious defense in the form of its proposed counterclaim against FDIC-R. A counterclaim could provide a meritorious defense necessary to set aside the entry of a default. *Cf. TCI Group Life Ins.*, 244 F.3d at 700 (finding a meritorious defense "on the basis of the factual allegations that appear in the interpleader and cross-claim pleadings"). As explained below, however, Twin has failed to demonstrate that its proposed counterclaim would not be futile.

In determining whether Defendants' proposed counterclaim amounts to a meritorious defense, the Court looks to see whether the facts alleged therein, if true, would constitute a defense. *See Mesle*, 615 F.3d at 1094. Defendants' counterclaim alleges five causes of action based on fraud (intentional misrepresentation, negligent misrepresentation, concealment, deceit, and conspiracy to commit fraud) as a result of the Riverside Property transaction. Defendants allege La Jolla Bank and its officers, Hall and Rodriguez, defrauded them by misrepresenting the true value of the Riverside Property, by transferring only three parcels instead of the four promised, by charging them a higher-than-promised interest rate, and by failing to record Defendants' Deed of Trust in the second position.

As FDIC-R points out, however, all of Defendants' causes of action appear to be time-barred on the face of the counterclaim. Each cause of action relates to the events taking place on or before July 2007, and therefore is barred by the three-year statute of limitations applicable to "action[s] for relief on the ground of fraud." *See* CAL. CIV. PROC. CODE § 338(d). Contrary to Defendants' arguments, they are not entitled to tolling due to delayed discovery of their causes of action. *See id.* ("The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."). "In order to rely on the discovery rule for delayed accrual of a cause of action, [a party] whose [pleading] shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (citation and internal quotation marks omitted). The party seeking to take advantage of the delayed discovery rule has the

---

[1] Because there are no Sections 2809 and 2810 in the California Code of Civil Procedure, it appears Defendants meant to refer to Sections 2809 and 2810 of the California Civil Code.

burden of showing diligence; conclusory allegations are not sufficient. *Id.* In this case, Defendants failed to plead specific facts to show their "'inability to have made earlier discovery despite reasonable diligence.'" *See id.* (citation omitted). To the contrary, Defendants were aware of all facts constituting their causes of action at the time the loan on the Riverside Property closed in July 2007. Specifically, at that time, Defendants could have discovered—by reading the Deed of Trust and the Grant Deed—that La Jolla Bank transferred only three out of four parcels. Similarly, Defendants could have discovered at that time that they were provided with a higher-than-promised interest rate or that their Deed of Trust was not recorded in the second position as promised. Because all of that information was available to Defendants in July 2007 or shortly thereafter, and because they have not shown that they were prevented in any way from discovering that information, they are not entitled to tolling provided by § 338(d).[2] *See id.* at 807-08 ("The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation." (citation and internal quotation marks omitted)).

Furthermore, as FDIC-R asserts, Defendants' proposed counterclaim fails for failure to exhaust administrative remedies under the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821. Congress enacted the FIRREA "to enable the federal government to respond swiftly and effectively to the declining financial condition of the nation's banks and savings institutions." *Henderson v. Bank of New England*, 986 F.2d 319, 320 (9th Cir. 1993). The statute grants the FDIC, as receiver, broad powers to determine claims asserted against failed banks. *See id.* To effectuate this power, Congress created a claims process for the filing, consideration, and determination of claims against insolvent banks. *See* 12 U.S.C. § 1821(d)(3)-(10). Federal courts lack jurisdiction over any claim filed after a receiver is appointed but before administrative exhaustion. *Henderson*, 986 F.2d at 320-21 (citing 12 U.S.C. § 1821(d)(13)(D)); *see also id.* at 321 ("The statute bars judicial review of any non-exhausted claim, monetary or nonmonetary, which is 'susceptible of

---

[2] To the extent Defendants allege that Hall and Rodriguez misrepresented the true value of the Riverside Property, they have failed to plead sufficient facts to show "the time and manner of discovery" of the true value of the Property. *See Fox*, 35 Cal. 4th at 808.

resolution through the claims procedure.'" (citation omitted)). In the present case, Defendants make no effort to show that they have exhausted the claims process provided by the FIRREA with respect to their causes of action or that such exhaustion would have been futile. Accordingly, because these causes of action were filed after FDIC was appointed as a receiver for La Jolla Bank, and because the proposed counterclaim fails to allege that they were properly exhausted, this Court lacks subject matter jurisdiction. *See* 12 U.S.C. § 1821(d)(13)(D); *Henderson*, 986 F.2d at 320-21.

Finally, Defendants' proposed counterclaim fails because it relies on undisclosed promises allegedly made by La Jolla Bank and its officers during the consummation of the Riverside Property transaction. The Federal Deposit Insurance Act of 1950 ("FDIA") provides that

> [n]o agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement . . . (A) is in writing, . . . (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, . . . (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and . . . (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1). "One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." *Langley v. Fed. Deposit Ins. Corp.*, 484 U.S. 86, 91 (1987). "A second purpose of § 1823(e) is implicit in its requirement that the 'agreement' not merely be on file in the bank's records at the time of an examination, but also have been executed and become a bank record 'contemporaneously' with the making of the note and have been approved by officially recorded action of the bank's board or loan committee." *Id.* at 92. The scope of § 1823(e) is broad; it applies to all forms of voidable agreements—from failure of consideration to allegations of fraud in the inducement. *See id.* at 92-95 (holding that fraudulent promises inducing the borrower's execution of a note to a bank fell within the meaning of "agreement" and consequently could not be used as a defense by the borrower against the FDIC).

In the present case, Defendants' counterclaim alleges that La Jolla Bank and its officers made certain promises and representations regarding the sale of the Riverside Property, that Defendants relied on those promises and representations, and that they were induced into the transaction based thereon. These "undisclosed" conditions and defenses are precisely what the FDIA was enacted to

1 | combat. *See Langley*, 484 U.S. at 94. All of these alleged promises and representation are a part of
2 | the "agreement" to which the writing, approval, and filing requirements of § 1823(e) attach. *See id.*
3 | at 96. There are no allegations in the proposed counterclaim that any of these requirements were met.
4 | Accordingly, because the representations alleged by Defendants did not meet the requirements of the
5 | FDIA, they cannot be asserted as defenses here. *See id.*; *see also D'Oench, Duhme & Co. v. Fed.*
6 | *Deposit Ins. Corp.*, 315 U.S. 447, 458-62 (1942) (concluding, under federal common law, that the
7 | maker of a note could not present as a defense to its enforcement a secret agreement between the note's
8 | maker and the lending bank when the note had been acquired by the federal insurer).
9 |     For the foregoing reasons, even accepting all of Defendants' allegations as true, Defendants
10 | have failed to show that their proposed counterclaim would not be futile. Accordingly, because
11 | Defendants have failed to demonstrate a meritorious defense, their motion to set aside the entry of
12 | default against Twin is **DENIED**. *See Mesle*, 615 F.3d at 1094; *TCI Group Life Ins.*, 244 F.3d at 700.

### II. Motion to file a counterclaim

14 |     Defendants also move for leave to file a counterclaim. In addition to alleging the above-
15 | mentioned five causes of action, the proposed counterclaim seeks to add Mission South as a Counter-
16 | Claimant and Hall and Rodriguez as Counter-Defendants. Pursuant to Federal Rule of Civil Procedure
17 | 13(e), "[t]he court may permit a party to file a supplemental pleading asserting a counterclaim that
18 | matured or was acquired by the party after serving an earlier pleading." In determining whether a party
19 | should be allowed to file a supplemental pleading asserting a counterclaim, courts use Federal Rule
20 | of Civil Procedure 15's standard for granting leave to amend. *See Healy v. DJO, LLC*, No.
21 | 11cv673-IEG (JMA), 2012 WL 474482, at *1 (S.D. Cal. Feb. 14, 2012); *Magnesystems, Inc. v.*
22 | *Nikken, Inc.*, 933 F. Supp. 944, 947-48 (C.D. Cal. 1996). Rule 15(a) provides that leave to amend
23 | shall be "freely give[n] . . . when justice so requires." The district court, however, "need not grant
24 | leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3)
25 | produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*,
26 | 465 F.3d 946, 951 (9th Cir. 2006); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52
27 | (9th Cir. 2003). "A district court does not err in denying leave to amend where the amendment would
28 | be futile . . . ." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (citation omitted).

      In the present case, Defendants' proposed counterclaim would be futile. "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As discussed above, even accepting all of Defendants' allegations as true, their proposed counterclaim fails to state a claim upon which relief can be granted. First, all of the causes of action appear to be time-barred by the applicable statute of limitations. *See* CAL. CIV. PROC. CODE § 338(d). Second, because Defendants do not allege that they have properly exhausted their claims under the FIRREA, this Court lacks subject matter jurisdiction over those claims. *See* 12 U.S.C. § 1821(d)(13)(D); *Henderson*, 986 F.2d at 320-21. Finally, Defendants' proposed counterclaim fails because it relies on undisclosed promises allegedly made by La Jolla Bank and its officers during the consummation of the transaction, but there are no allegations that the writing, approval, and filing requirements of 12 U.S.C. § 1823(e) were met. *See Langley*, 484 U.S. at 96; *see also D'Oench, Duhme*, 315 U.S. at 458-62. Accordingly, Defendants' proposed counterclaim is futile because it would be subject to dismissal under Rule 12(b)(6). Defendants' motion for leave to file the counterclaim is therefore **DENIED**. *See Saul*, 928 F.2d at 843.

## CONCLUSION

Defendants' motion to set aside the default entered against Twin and to reinstate its answer is **DENIED**. Defendants' motion for leave to file a counterclaim is **DENIED**.

**IT IS SO ORDERED.**

Date: May __, 2012

Honorable Roger T. Benitez
United States District Judge